UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY T. PETERSON,

                Plaintiff,

v.

JOHN DOW, *et al.*,

                Defendants.

_____/

Civil Action No. 23-11401

David M. Lawson
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 54)**

**I.      REPORT**

    **A.      Background**

On November 23, 2022, *pro se* plaintiff Bradley Peterson ("Peterson") was protesting in front of the City of Woodhaven ("City") Police Department and City Hall. (ECF No. 1, PageID.10). On that date, he was ticketed for violating an ordinance related to the prohibited placement of signs. (*Id.*, PageID.11). According to Peterson, on April 5, 2023, he was found guilty of the ordinance violation and fined $130 by the Honorable Jennifer Coleman Hesson of the 33rd District Court. (*Id.*, PageID.14). Peterson then filed the instant action pursuant to 42 U.S.C. § 1983, alleging that he was issued the citation in retaliation for filing a prior lawsuit – in 2018 – against the City and some of its individual police officers.[1] Initially named as defendants in the instant action were the City, the State

---

[1] *See Bradley Peterson v. Ryan Smith, et al.*, E.D. Mich. Civil Action No. 18-12838.

of Michigan, and numerous individuals. At present, however, the only remaining defendants are the City; the City's Mayor, Patricia Odette; the City's Chief of Police, "John Dow"[2]; and City police officers Sergeant Jackson and A. Sema (collectively, Defendants).[3] In his complaint, Peterson alleges violations of his civil rights and seeks $10 million in damages.

On May 21, 2024, Defendants filed a motion for summary judgment, arguing that Peterson's claims against them fail as a matter of law. (ECF No. 54). Peterson filed a response to this motion on June 17, 2024 (ECF No. 56), and Defendants filed a reply brief on July 2, 2024 (ECF No. 57).

An Order of Reference was entered on July 5, 2023, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 9). Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

**B.     Relevant Facts**

After filing his 2018 lawsuit, Peterson began protesting in various locations in the

---

[2] In their pending motion for summary judgment, Defendants indicate that they do not know who Chief "John Dow" is, but suspect that Peterson intended to name "John Doe" as a defendant, as opposed to "John Dow." (ECF No. 54, PageID.750, n. 3). Although Peterson has not substituted police chief Scott Fraczek in for Chief "John Dow," Defendants err on the side of caution in their motion by addressing claims that Peterson might be pleading against Chief Fraczek.

[3] On October 23, 2023, this Court entered a Report and Recommendation ("R&R") to grant a motion to dismiss filed by the State of Michigan and a motion for partial summary judgment filed by Mayor Odette, Judge Hesson, and Prosecutor Urich. (ECF No. 25). This R&R was adopted in part, over Peterson's objections, resulting in the dismissal of Peterson's claims against the State of Michigan, Judge Hesson, and Prosecutor Urich. (ECF No. 34).

City of Woodhaven, mostly at the corner of West Road and Hall Road, wearing a suspender sign that stated, "Black Lives Don't Matter" and "White Crime Pays." Over time, his protests transformed from wearing the suspender sign to placing several large signs in the public easement/right-of-way on West Road and Hall Road. Defendants assert that Peterson's placement of these signs violated City ordinance, which provides as follows, in relevant part:

> The following conditions shall apply to all signs erected and located in any use district:
>
> (1) Except for the following nature of signs, none shall be erected, installed, altered or relocated unless and until all necessary building and zoning permits have been issued by the building official and/or ordinance officer for any such sign(s).
>
> \* \* \*
>
> (3) No sign, except those established and maintained by the municipality, county, state or federal governments, shall be located in, project into, or overhang public right-of-way or dedicated public easement.

Woodhaven, Mich. Municipal Code § 110-711(1), (3).

On the day in question, November 23, 2022, photographs show that Peterson placed several signs – including signs that read "Black Lives Don't Matter," "White Crime Pays," and "White Privilege 4Ever" – in the public easement on West Road in front of the Woodhaven Police Department and Woodhaven City Hall.[4] (ECF No. 54, PageID.744-45; ECF No. 23-11; ECF No. 54-3). According to Chief Fraczek's documentation of the event

---

[4] Peterson admitted at his deposition that photographs offered as evidence by Defendants (and reproduced in Defendants' summary judgment brief) accurately depict the location of his signs on the date in question, and that he did not apply for a permit prior to placing his signs in this location, which was in a public easement. (ECF No. 54-2, PageID.777, 779).

3

in question:

> I approached Mr. Peterson and advised him the posting of the signs were [sic] in violation of local ordinance and needed to be removed. Mr. Peterson refused my request and asked what would happen if he failed to comply. I informed him he would be cited for the violation and he asked to place the ticket on the windshield of his van. I informed then Sgt. Jackson to issue[] Mr. Peterson a Notice of Violation and place it under the windshield wiper of his van.

(ECF No. 23-4, PageID.281). Sergeant Jackson then issued the municipal civil infraction to Peterson, as directed by Chief Fraczek. (*Id.*, PageID.280). The November 23, 2022 ticket specifically stated that if the $25 fee was not paid within 10 days, a civil infraction citation would be issued.[5] (ECF No. 23-5, PageID.285).

On January 5, 2023, it was brought to Chief Fraczek's attention that Peterson had not paid the $25 fee for the violation within 10 days, as required. (ECF No. 23-4, PageID.281). Chief Fraczek contacted Peterson and asked if he intended to pay the ticket or wished to contest it. (*Id.*). Peterson stated that he would pay the ticket by January 13, 2023; however, by January 26, 2023, he had failed to do so, indicating instead that he "would prefer to take the case to court." (*Id.*). As a result, on January 30, 2023, now-Lieutenant Jackson issued Peterson a new civil infraction violation for failing to pay the $25 fee. (*Id.*, PageID.282). On April 5, 2023, a formal hearing was held, Peterson was found responsible for the civil infraction, and he was ordered to pay a $135 fine. (ECF No. 23-7, PageID.290). At his deposition, Peterson admitted that he was given an opportunity

---

[5] Peterson was issued several subsequent citations for placing signs in the public easement/right-of way. Because the only incident at issue in this case is the one that occurred on November 23, 2022, however, the Court will not discuss those additional citations in detail.

to be heard and to present evidence and witnesses at this hearing. (ECF No. 54-2, PageID.775).

On June 13, 2023, Peterson filed his complaint in this case, in which he brings the following claims under § 1983: (1) retaliation in violation of the First Amendment; (2) malicious prosecution; (3) conspiracy; (4) denial of his rights to both procedural and substantive due process; and (5) a municipal liability claim under *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978).[6] (ECF No. 1). In their motion, Defendants argue that summary judgment should be granted in their favor on all of Peterson's claims. For the reasons set forth below, the Court agrees.

### C.     Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material

---

[6] In his complaint, Peterson also asserts that he was "single[d] out" and "discriminated against" by Defendants. (ECF No. 1, PageID.16, 19). To the extent Peterson is alleging race discrimination – as he refers elsewhere in his complaint to "white racist" City employees allegedly taking adverse action against him, and in his summary judgment response to "racism" on Defendants' part – such a claim fails. In order to succeed on a claim of discrimination in violation of the First and Fifth Amendment, the United States Supreme Court has made clear that a plaintiff must plead and prove that the defendant acted with discriminatory purpose. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009). This requires demonstrating that a decisionmaker undertook a course of action *because of*, not merely *in spite of*, the action's adverse effects upon an identifiable group. *Id.* Here, where the record clearly establishes that Peterson violated City ordinance when he placed his signs in the public easement/right-of-way, and there is no evidence that the individual defendants treated Peterson differently or less favorably with respect to enforcement of this ordinance *because of his race*, summary judgment is proper on any discrimination claim Peterson purports to bring. *See Naumovski v. Norris*, 934 F.3d 200, 212-13 (2d Cir. 2019) ("but-for" causation has long been a standard prerequisite in § 1983 discrimination claims).

5

if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**D. Analysis**

    *1. First Amendment Retaliation*

In his complaint, Peterson first alleges that Defendants retaliated against him for exercising his First Amendment rights. More specifically, Peterson asserts that he was issued the November 23, 2022 citation "out of reprisal – revenge" for the filing of his 2018

lawsuit against the City of Woodhaven and certain individual officers (who are not parties to this case). (ECF No. 1, PageID.7).

In order to make out a *prima facie* case of First Amendment retaliation, Peterson must show that: (1) he participated in constitutionally protected activity; (2) Defendants took an adverse action against him likely to "deter a person of ordinary firmness" from continuing to engage in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "the adverse action was motivated at least in part by [Peterson's] protected conduct." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

In other words, to prove his claim, Peterson must be able to establish that his protected activity – i.e., the filing of his 2018 lawsuit – was the substantial and motivating factor behind Defendants' alleged retaliatory conduct:

> As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim.
>
> To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury. Specifically, it must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotations, citations, and brackets omitted) (emphasis in original). Where government officials can show that the action

7

would have occurred even if the plaintiff had not engaged in protected activity, there is an absence of "but for" causation and there is no valid claim of retaliation. *See Lemaster v. Lawrence Cty., Ky.*, 65 F.4th 302, 309 (6th Cir. 2023).

In this case, Peterson's retaliation claim stems from his filing of a prior lawsuit, which, as Defendants concede, constitutes protected activity sufficient to meet the first prong of a retaliation claim. (ECF No. 54, PageID.756). *See, e.g., Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (filing a civil rights lawsuit constitutes protected conduct). Defendants also do not dispute "that the issuance of a civil infraction constitutes an adverse action." (ECF No. 54, PageID.756). Thus, the salient question is whether Peterson has raised a genuine issue of material fact as to causation, that is, whether the challenged conduct of Chief Fraczak and/or Sergeant Jackson[7] was motivated by Peterson's filing of the 2018 lawsuit.

Defendants argue that Peterson cannot establish this causal connection and that, in any event, they would have taken the same action even in the absence of Peterson's protected activity, as Peterson clearly violated the City's ordinance when he placed his signs in the public easement/right-of-way. (*Id.*, PageID.757-59). Indeed, as explained more fully above, *supra* at 2-5, Peterson admitted that photographs offered into evidence by Defendants accurately depict the placement of his signs on the date in question, and there is no dispute that the signs were in the public easement in violation of the salient City ordinance. Moreover, Peterson's 2018 lawsuit was filed more than *four years* prior to

---

[7] Peterson does not allege that either of the other remaining individual defendants – A. Sema or Mayor Odette – was responsible for issuing the November 23, 2022 citation.

8

issuance of the citation at issue, and the individual defendants responsible for the citation's issuance (i.e., Chief Fraczak and Sergeant Jackson) were not named as defendants in the prior suit. Peterson has offered no evidence that Chief Fraczak and/or Sergeant Jackson were even aware of his 2018 lawsuit, let alone that its filing motivated their actions in November 2022. Indeed, when Peterson was asked at his deposition what evidence he has to show that Chief Fraczak and Sergeant Jackson issued the 2022 citation in retaliation for his 2018 lawsuit, Peterson said only that "[t]hey're white and they're not stupid." (ECF No. 54-2, PageID.778). Such conclusory stereotype testimony does not allow for a reasonable inference as to causation, and is thus insufficient to establish a genuine issue of material fact as to that prong of Peterson's First Amendment retaliation claim. This alone is grounds for granting summary judgment as to Peterson's First Amendment retaliation claim.

Moreover, courts in the Sixth Circuit have routinely held that summary judgment is appropriate on a First Amendment retaliation claim if the adverse action alleged by the plaintiff is the issuance of a citation, and the plaintiff is found guilty of or responsible for the charge. *See Djonovic v. Septer*, No. 22-12393, 2024 WL 1478188, at *5 (E.D. Mich. Jan. 11, 2024), *report and recommendation adopted in relevant part*, 2024 WL 1256282 (E.D. Mich. Mar. 25, 2024) (finding that "even if defendants' motivations were in some part retaliatory" in issuing civil infraction violations, the plaintiff's "responsible" and "nolo contendere" pleas "establish that there were valid reasons for the issuance of ordinance violations") (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 604 (6th Cir. 2012) ("[W]here there is probable cause to file a criminal complaint, a plaintiff will be unable to

9

prevail on [a] retaliation claim.") and *Fannon v. Patterson*, No. 3:13-CV-14, 2014 WL 4273337, at *4 (S.D. Ohio Aug. 29, 2014) (finding that the plaintiff's "First Amendment retaliation claim must fail in light of the fact that he was convicted of certain offenses in the underlying traffic and criminal cases after entering guilty pleas in exchange for the dismissal of the remaining charges")). Here, then, where Peterson was found responsible for the civil infraction by Judge Jennifer Hesson at the April 5, 2023 hearing (ECF No. 23-7), his First Amendment retaliation claim fails.

For all of these reasons, summary judgment should be granted in Defendants' favor on this claim.

### 2. *Malicious Prosecution*

Next, Peterson alleges that Defendants "maliciously prosecuted" him when they issued him the November 23, 2022 citation. (ECF No. 1, PageID.7). In order to prevail on a federal civil rights claim for malicious prosecution, a plaintiff must show the following:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (internal quotations omitted). Here, Peterson's malicious prosecution claim fails outright because he was issued a civil infraction, which is not a "criminal prosecution." *See Miller v. Sanilac Cty.*, 606 F.3d 240, 248 (6th Cir. 2010) ("The District Court properly granted summary judgment on the

10

malicious prosecution claim with respect to four of the seven tickets because they constituted civil infractions, not criminal prosecutions."); *Young v. City of Muskegon Heights*, No. 1:23-cv-460, 2024 WL 3439671, at *6 (W.D. Mich. July 17, 2024) ("Issuing a ticket for a civil infraction cannot support a malicious prosecution claim under the Fourth Amendment.") (citing cases). Thus, summary judgment should be granted on Peterson's malicious prosecution claim.[8]

### 3. *Conspiracy*

In his complaint, Peterson also alleges that Defendants conspired against him in several ways to violate his civil rights. (ECF No. 1). A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). To succeed on such a claim, Peterson must show "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis*, 489 F.3d at 290). Peterson has the burden to come forward with some evidence "from which to infer that the defendants acted in concert" in performing their unlawful acts. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a

---

[8] Peterson also fails to satisfy the fourth prong of a malicious prosecution claim, as the November 2022 citation was not resolved in his favor.

claim under § 1983." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (internal quotations and brackets omitted). The pleading standard for conspiracy claims is "relatively strict" in that regard. *Id.*

Here, Peterson vaguely alleges, in relevant part, that Chief Fraczak conspired with Sergeant Jackson to write him citations, and Chief Fraczak and Sergeant Jackson conspired with Mayor Odette in City Council meetings to intimidate Peterson and to stop his public protests.[9] (ECF No. 1, PageID.17-20, 23, 24). Peterson does not expand upon these allegations with the requisite degree of specificity, and, even in response to Defendants' motion for summary judgment, he fails to address or rebut Defendants' arguments regarding his conspiracy claim.[10] Moreover, no genuine issue of material fact exists as to

---

[9] In his complaint, Peterson also alleges that Mayor Odette conspired with the State of Michigan to deny Peterson his right to peacefully protest; Judge Hesson conspired with Prosecutor Urich, the City, and the State of Michigan to deny Peterson this right, as well as in refusing Peterson's requested change of venue, failing to disqualify herself, and ultimately finding him responsible for the civil infraction; Prosecutor Urich conspired with the City and the State of Michigan to maliciously prosecute him and punish him for engaging in public protests; and the City conspired with the State of Michigan to label him a United States threat and terrorist. (ECF No. 1, PageID.13-14, 24, 26, 28-30). However, Judge Hesson, Prosecutor Urich, and the State of Michigan have already been dismissed from the case. Thus, Peterson cannot succeed on his conspiracy claims related to alleged conspiracies with them.

[10] As "evidence" of Defendants' alleged conspiracy (and discrimination), Peterson attaches to his summary judgment response certain court records purportedly demonstrating that citations issued to him *after* November 23, 2022 were "all dismissed" once venue was transferred to other courts. (ECF No. 56, PageID.799-847). This is irrelevant, however, as none of the subsequent citations were at issue in Peterson's complaint. Moreover, while it appears that some of the subsequent citations were in fact dismissed, as Peterson asserts, Defendants have produced a sworn affidavit from Edward Zelenak, the prosecuting attorney for the majority of the cases at issue, who averred that these cases were dismissed as part of a global plea agreement, as Peterson is indigent and Zelenak "agreed to let him plead responsible to several civil infractions of prohibited parking in exchange for the dismissal of the remaining civil infractions." (ECF No. 57, PageID.874). Thus, the fact that citations unrelated to the one at issue in this case might have been dismissed does not raise a material question of fact as to the existence of a conspiracy to violate Peterson's constitutional rights with respect to issuance of the November 2022 citation at issue, nor is it

12

whether the actions of Chief Fraczak, Sergeant Jackson, and/or Mayor Odette – in allegedly conspiring to issue him citations to discourage him from engaging in public protests – caused any *unlawful* injury to Peterson, as the evidence clearly establishes that Peterson violated the City's ordinance by placing his signs in a public easement/right-of-way. For these reasons, summary judgment should be granted on Peterson's conspiracy claim.[11]

### 4. *Violation of Due Process*

Next, Peterson alleges that Defendants violated his rights to both procedural and substantive due process when they issued the challenged citation. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. This clause has both a procedural and substantive component. *See EJS Prop., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). "Procedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property; substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)).

---

evidence of a conspiracy or discrimination.

[11] In their motion for summary judgment, Defendants assert that Peterson's public protests were never discussed in City Council meetings "and the meeting minutes will reflect this fact." (ECF No. 54, PageID.761). While Defendants do not actually offer any meeting minutes as evidence in support of their motion, Peterson offers no evidence – or even argument – to the contrary. Thus, Peterson is left with only his unsupported allegations, which, at least without showing a proper foundation for them, are insufficient to survive summary judgment. *See Alexander*, 576 F.3d at 560 ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

### a. Procedural Due Process

To prevail on a procedural due process claim, a plaintiff must prove that: (1) he had a constitutionally protected interest; (2) the government deprived him of that interest; and (3) the government did not afford him constitutionally adequate process. *See Golf Village N., LLC v. City of Powell, Ohio*, 42 F.4th 593, 598 (6th Cir. 2022). "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005).

With respect to Peterson's November 23, 2022 civil infraction, Peterson admits that he was provided notice of the infraction and an opportunity to be heard at the April 5, 2023 hearing, where he was ultimately found responsible for the civil infraction and given the chance to appeal that finding. (ECF No. 54-2, PageID.775; ECF No. 23-7, PageID.351). The law is clear that this is all the procedure that is constitutionally required. *See, e.g., MacLeod v. Moritz*, No. 18-11653, 2019 WL 3072098, at *3 (E.D. Mich. July 15, 2019) ("regarding plaintiff's civil infraction fine of $100, a review of the record reveals that plaintiff received adequate procedural due process when he received notice, a hearing, and an appellate process after receiving the fine"). Thus, Defendants are entitled to summary judgment on Peterson's procedural due process claim.

### b. Substantive Due Process

Peterson next alleges that his Fourteenth Amendment right to substantive due process was violated in this case. "Substantive due process 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" *Guertin v.*

14

*State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). It "serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman*, 640 F.3d at 728 (internal quotations omitted). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience … or interferes with rights implicit in the concept of ordered liberty ….'" *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *U.S. v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it violates the decencies of civilized conduct." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (internal quotations omitted).

In this case, no reasonable juror could find the issuance of a civil infraction conscience-shocking, particularly where Peterson repeatedly violated the City's ordinance by placing his signs in the public easement/right-of-way – despite being warned about such actions on multiple occasions – and where he was subsequently found responsible for the violation after a formal hearing. Thus, summary judgment should be granted on Peterson's substantive due process claim as well. *See, e.g., MacLeod*, 2019 WL 4387344, at *1, 5 (issuance of civil infraction to plaintiff for leaving property on state land for more than 24 hours, of which he was found responsible after a hearing, was not "arbitrary, capricious or conscience-shocking" so as to support a substantive due process claim).[12]

---

[12] Because the Court finds that Peterson has not established a genuine issue of material fact as to whether any of the individual defendants violated his constitutional rights, it need not address in detail the merits of Defendants' qualified immunity argument (ECF No. 54, PageID.754-56).

15

### 5. Monell *Claim Against the City of Woodhaven*

Finally, the Court must address Peterson's claim against the City of Woodhaven. A municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *See Monell,* 436 U.S. at 694. In order to establish liability under *Monell*, a plaintiff must identify an official policy or custom that caused his injury. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Once the policy or custom is identified, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). In other words, Peterson must show that the municipal action was taken with deliberate indifference to its known or obvious consequences and that his injuries occurred *because of* the execution of that policy. *Id.* at 407.

Here, Peterson's *Monell* claim against the City fails because, for all of the reasons detailed above, Peterson has not established that any of the individual defendants committed a constitutional violation. Specifically, the Sixth Circuit has long held that a municipality cannot be held liable under § 1983 absent an underlying constitutional violation. *See Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 523 (6th Cir. 2013); *Andrews v. Wayne Cty., Mich.*, 957 F.3d 714, 725 (6th Cir. 2020) ("This court has 'continuously held that under § 1983, a county can only be held liable if there is a showing of an underlying constitutional violation by the county's officials.'") (quoting *Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020)); *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019) ("[W]here there has been no showing of individual constitutional violations

16

… there can be no municipal liability."). Thus, where Peterson has failed to create a genuine issue of material fact as to whether the individual defendants violated his constitutional rights, summary judgment should be granted in the City's favor on Peterson's *Monell* claim against it.

## II.     RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 54)** be **GRANTED**.

Dated: November 18, 2024                                  s/David R. Grand
Ann Arbor, Michigan                                           DAVID R. GRAND
                                                                         United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir.1981).  The filing of objections that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another

party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 18, 2024.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager