UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY PETERSON,

                Plaintiff,                Case Number 23-11401
v.                                                  Honorable David M. Lawson
                                                         Magistrate Judge David R. Grand
JOHN DOW, SGT. JACKSON,
A. SEMA, PATRICIA ODETTE, and
CITY OF WOODHAVEN,

                Defendants.
_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE WITH PREJUDICE**

Plaintiff Bradley Peterson filed a complaint without the assistance of an attorney alleging that certain public officials interfered with his First Amendment right to protest in a public space by issuing a violation summons, for which he was convicted and fined. The case was referred to Magistrate Judge David R. Grand to conduct all pretrial proceedings. The Court previously dismissed some of the defendants from the case on motion. The remaining defendants filed a motion for summary judgment, and on November 18, 2024 Judge Grand issued a report (his fifth in this case) recommending that the motion for summary judgment be granted. The Court previously adopted the report and issued an order granting that motion and dismissing the case after the plaintiff failed to file timely objections. However, the plaintiff later moved to enlarge the period for objections, and the Court granted his request and vacated the dismissal order. The plaintiff thereafter filed a single objection asserting that Judge Grand's recommendation was affected by bias against him. That objection is meritless and will be overruled. The motion for summary judgment will be granted and the case will be dismissed in its entirety.

I.

In 2018, plaintiff Bradley filed a lawsuit against the City of Woodhaven and some of its police officers concerning his arrest outside the 33rd District Court. That case remains pending. *See Bradley Peterson v. Ryan Smith*, No. 18-12838 (E.D. Mich.) (Leitman, J.). Shortly after he filed that lawsuit, Peterson began protesting his alleged mistreatment at several locations in Woodhaven with signs including slogans like "Black Lives Don't Matter" and "White Crime Pays." Peterson's public protests apparently were in violation of a city ordinance that generally forbids the posting of signs in the public right-of-way. *See* Woodhaven, Mich. Municipal Code § 110-711(3).

On November 23, 2022, Peterson again was protesting within the public easements of the City of Woodhaven when he was issued a $25 ticket by one Sergeant Jackson of the Woodhaven Police Department. *See* ECF No. 23-4, PageID.280-81. The ticket stated that if Peterson did not pay a $25 fine within ten days, a civil infraction citation would be issued. ECF No. 23-5, PageID.285. Mr. Peterson did not pay the ticket, so the police department issued the civil infraction citation. ECF No. 23-4, PageID.282. At Peterson's court hearing, 33rd District Court Judge Jennifer Hesson found him responsible for failing to pay the $25 ticket and ordered him to pay a $135 fine. ECF No. 23-7, PageID.289. During his deposition in this case, Peterson stated that the court hearing afforded him an opportunity to be heard and to present evidence and witnesses. ECF No. 54-2, PageID.775.

Peterson, without the assistance of counsel, filed this lawsuit under 42 U.S.C. § 1983 on June 12, 2023 against the State of Michigan, the City of Woodhaven, Mayor Patricia Odette, Judge Jennifer Hesson, Prosecutor William Urich, and several other city employees. He alleged claims for retaliation in violation of the First Amendment, malicious prosecution, conspiracy, denial of

his procedural and substantive due process rights, and a municipal liability claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Court previously adopted Judge Grand's recommendation that the plaintiff's claims against the State, Hesson, and Urich be dismissed on immunity grounds. *See* ECF No. 34. The remaining defendants then moved for summary judgment. After reviewing the parties' arguments, Judge Grand recommended the defendants' motion be granted. Peterson filed one tardy objection with leave of court. Then, on February 12, 2025, he filed a document titled "motion[] request under duress to concede to defendants City of Woodhaven[,] State of Michigan reprisal . . . immunity Jim Crow laws." ECF No. 66. The document refers to an incident where the plaintiff apparently was arrested on January 6, 2025 in Woodhaven and states that he "concedes" to the defendants' motion for summary judgment. It is not clear whether the plaintiff intends this filing to withdraw his objection and opposition to the defendants' position that the case should be dismissed. But because the remaining issues are fully briefed, the Court will give fresh review to the magistrate judge's ruling based on the plaintiff's objection.

Judge Grand held that the plaintiff failed to produce evidence that creates a genuine dispute of material fact on some of his claims and that others were legally defective. He explained that the defendants were entitled to summary judgment on the plaintiff's First Amendment retaliation claim because the only evidence that Peterson could muster that the police officer defendants issued his citation on account of his 2018 lawsuit was his statement during his deposition that "[t]hey're white and they're not stupid." Judge Grand added that the fact that Peterson was found responsible for the citation means he cannot prove it was a retaliatory action. The plaintiff's malicious prosecution claim also fails, Judge Grand explained, because the only prosecution he cited was civil, not criminal, in nature.

Judge Grand next determined that the plaintiff's submissions were too vague to create a fact dispute on his claim alleging that the defendants conspired to violate his civil rights. He also held that Peterson's due process claims failed because Peterson was given notice and an opportunity to be heard regarding his civil infraction, and no reasonable juror could find that the issuance of a citation — where Peterson admitted repeatedly violating the law — was conscience-shocking. Finally, Judge Grand determined that the plaintiff's *Monell* claim against the City must fail if his other constitutional claims failed.

In his sole objection to the report and recommendation, Peterson asserts that Judge Grand was biased against him and issued his recommendation as a form of "reprisal." ECF No. 64, PageID.912. As evidence, he cites certain statements made by Judge Grand when he presided over his other case against the Woodhaven Police Department, *Peterson v. Smith*, No. 18-12838 (E.D. Mich.). Piecing together the records attached to his objection, it appears that the parties in that case held a status conference with Judge Grand on November 7, 2024, where Peterson was represented by Barbara Patek of the *Pro Se* Legal Clinic. Apparently, the parties discussed the possibility of settlement, and a follow-up conference was scheduled for December. In advance of the second conference, Judge Grand emailed counsel to ask whether it made sense to proceed. He expressed concerns about Mr. Peterson's "hostile" behavior on the parties' previous settlement conference, a filing where Mr. Peterson stated that he recently been involved in a physical altercation while protesting, another filing where Peterson referred to his "mental emotional stress suicidal — homicidal — revenge thoughts," and Peterson's "continued completely unrealistic (to put it mildly) demand." *Id.* at PageID.921. Judge Grand continued that "the only way *Mr. Peterson* can show that *he* is legitimately interested in resolving this case through a settlement

conference is if he provides a demand that is very substantially lower than his present demand." *Ibid.*

It appears that the parties did ultimately meet for a second settlement conference, which was again unsuccessful. Peterson argues that the statements in the emails suggest that Judge Grand was biased against him in this case.

II.

When a party files objections to a report and recommendation, the court will "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Although the district judge will re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part, 28 U.S.C. § 636(b)(1), this review is not plenary. "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Objections to a magistrate's report and recommendation must be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious."

*Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object," because it does not focus the Court's attention on any specific issues for review, "thereby making the initial reference to the magistrate useless." *Ibid.*

Peterson's objection alleging bias by the magistrate judge cites no legal authority. There is a statute, however, which requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b)(1). When an allegation of bias is made, the Court must ask whether "a 'reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993), *as amended* (Aug. 11, 1993) (quoting *United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990)) (some internal marks omitted). This standard is "*objective*" and is "'not based on the subjective view of a party.'" *Ibid.* And the source of the alleged bias must be "extrajudicial," that is, not arising from the judge's experience on the case. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Peterson has not established bias on Magistrate Judge Grand's part. As an aside, it does not appear that Peterson presented this concern to Judge Grand directly, for instance in a motion seeking his recusal, the usual procedure for dealing with such circumstances. *See Goward v. United States*, 569 F. App'x 408, 410 (6th Cir. 2014) ("A motion to disqualify must first be presented to the judge whose impartiality is questioned."). Perhaps Peterson was unable to do this because he did not perceive Judge Grand's alleged attitude toward him until after he had issued

the report and recommendation. But considering for the first time the substance of the plaintiff's request reveals no cause for Judge Grand to have recused.

Peterson points to two statements made by Judge Grand that he says demonstrate bias. Both come from exchanges propagating from settlement discussions in Peterson's first lawsuit, also presided over by Judge Grand. The defendants argue that this Court cannot consider the statements (and must strike them), citing Evidence Rule 408, which bars the use of certain statements made during settlement negotiations for some purposes. This is not one of those purposes, though. Rule 408 says that evidence of "furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim," and "conduct or a statement made during compromise negotiations about the claim" is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R Evid. 408(a). Peterson is not referencing the statements to prove liability or an amount of damages in this case. He offers them as proof of bias, which happens to be one of the non-exhaustive and enumerated allowable purposes for evidence of this sort. *See* Fed. R. Evid. 408(b) (stating that such evidence may be admissible "for another purpose, such as proving . . . bias or prejudice [or] negating a contention of undue delay.").

Moving on, Peterson first cites Judge Grand's statement referring to his behavior at the status conference in the 2018 case as "hostile." *See* ECF No. 64, PageID.921. This argument fails to account for the reality that a judge's opinions formed during a case are not a "basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. That includes opinions formed based on "prior contact with related cases." *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989).

Notably, although Peterson's 2018 case is technically distinct from this matter, it involve related parties, and Peterson has expressed similarly concerning sentiments regarding suicide and homicide in this case also. *See* ECF No. 49, PageID.670.

The record here does not demonstrate that Judge Grand's statement about Peterson's "hostile" behavior suggests any favoritism or antagonism sufficient to overcome this presumption. The full context of Peterson's actions during the parties' conference that prompted Judge Grand's email is not available to the Court, but the record in this case reveals cause for concern about Peterson's ability to participate appropriately, particularly Peterson's *admitted* thoughts of suicidal and homicidal ideation. *Ibid.* In context, Judge Grand's email reads as a commonsense inquiry about whether further settlement discussions would be a prudent use of the Court's time. Referring to the plaintiff's behavior — notably not the plaintiff himself — as "hostile" does not display any antagonism toward the plaintiff, much less any evidence that Judge Grand's impartiality might be questioned.

Peterson next takes issue with Judge Grand's assessment that his settlement demand was "completely unrealistic." As before, this statement represents an opinion "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings." *Liteky*, 510 U.S. at 555. And again, it does not display any antagonism or prejudice. The statement was part of the same email inquiry to Peterson's counsel about whether a further settlement conference would be useful. Settlement conferences are routine tools used by judges to facilitate and the streamline the resolution of cases and are authorized by the Rules of Civil Procedure. *See* Fed. R. Civ. P. 16(a)(5); *see also* E.D. Mich. LR 16.6 ("The judge assigned to the case may order a settlement conference to be held before that judge, another district judge, or a magistrate judge."). These conferences "provide a forum for parties to clarify their positions and to explore potential

resolutions, even in contentious cases." *Key v. City of Detroit*, 734 F. Supp. 3d 661, 664 (E.D. Mich. 2024). Judge Grand's statement that Peterson's settlement demand was "completely unrealistic (to put it mildly)," although blunt, most naturally reflects his assessment of the plaintiff's possible recovery compared to his settlement posture. Importantly, it represents his views of Peterson's 2018 case, which has distinct merits issues, and where he apparently had attempted to facilitate settlement. A judge's participation in a settlement conference does not necessarily supply grounds for recusal from participating in the merits phase of the same case, much less a different case. *Blackmon v. Eaton Corp.*, 587 F. App'x 925, 934 (6th Cir. 2014). In any event, nothing about this statement evinces antagonism toward the plaintiff inasmuch as it reflects an opinion about the possible recovery the law could support based on the facts the plaintiff then had presented. Judge Grand did not criticize the plaintiff as irrational, demean him, or otherwise criticize his case. He simply offered his perspective, likely based on his legal experience, that the parties were too far apart in their positions to suggest that further negotiations would be fruitful at that juncture.

Finally, the magistrate judge's report and recommendation is before this Court for fresh review based on the record and the plaintiff's objections to the merits of the issues determined by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). That review standard itself is a sufficient bulwark against any bias that might have crept into the proceedings at the magistrate judge level. *See Blackmon*, 587 F. App'x at 934-35.

III.

The magistrate judge correctly concluded that the plaintiff has not brought forth evidence that is sufficient to support all the elements of his claims against the remaining defendants. The plaintiff does not take issue with that conclusion as such and contends instead that Magistrate

Judge Grand was biased against him. The record does not support that accusation, and the objection will be overruled.

Accordingly, it is **ORDERED** that the report and recommendation (ECF No. 59) is **ADOPTED**, and the plaintiff's objection (ECF No. 64) is **OVERRULED**.

It is further **ORDERED** that remaining defendants' motion for summary (ECF No. 54) is **GRANTED**.

It is further **ORDERED** that complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that plaintiff's motion to concede (ECF No. 66) is **DISMISSED as moot**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 4, 2025